# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RADIANCE CAPITAL RECEIVABLES EIGHTEEN, LLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )    Case No. 4:16-cv-01196-DGK |
| SNEZANA STROTHMANN, | )<br>)<br>) |
| Defendant. | ) |

## ORDER DENYING MOTIONS CONCERNING PURPORTED SETTLEMENT

This lawsuit arises from Defendant's Snezana Strothmann's ("Defendant") alleged guarantee of a loan. The borrower defaulted, and now Plaintiff Radiance Capital Receivables Eighteen, LLC, ("Radiance") has sued to enforce Defendant's alleged guarantee.

Now before the Court are Defendant's Motion to Enforce Settlement Agreement (Doc. 55) and Motion to Pay Settlement Proceeds Into Court (Doc. 59). Defendant contends the parties reached a settlement agreement on June 30, 2017, which Plaintiff refuses to honor. Plaintiff responds that although the parties had extensive preliminary discussions, no settlement was ever reached.

The motions are DENIED because the Court finds that: (1) reducing the settlement agreement to writing was a condition precedent to the contract's formation, a condition which has not been met here, and (2) Defendant has not carried her burden of showing by clear, convincing, and satisfactory evidence that a settlement agreement exists.

**Background**

The parties agree on the essential facts, but dispute a few of the details. Where the parties' versions differ, the Court has adopted the account provided by Marc Wilson ("Wilson"), Plaintiff's counsel, because his account was made under oath and is credible.

On June 23, 2017, Wilson had a forty-minute phone call with Defense counsel Dan Simon ("Simon"). The call mostly concerned discovery matters, but at some point Simon suggested the case could be settled if the parties were in the same settlement range. Wilson told Simon that any settlement must be subject to written agreement and review and approval by Radiance. Wilson stated this was because he had not discussed with Radiance what other material terms it would require. Simon agreed, indicating his client would expect the same. Simon subsequently provided Wilson a number that Wilson took back to Radiance for consideration.

On June 26, Radiance requested additional information about Defendant's proposed method and timing of payments.

On June 29 at 11:25 a.m., Kelly Ricke, an attorney working with Simon, sent Wilson the first in a string of emails.

> Subject: Strothmann Discovery
>
> Hi Marc,
>
> Would you mind giving us until Monday on the answers to your second rogs and requests? Thanks,
>
> JKelly

Email chain (Doc. 65-2). That afternoon, Wilson emailed back Ms. Ricke and Simon:

> Yes, that sounds good. I'd like to know also if I can get the tax returns mentioning Delta Springs. I have to head to a funeral out

> of state next week, and I likely won't get back in the office until Friday, the deadline for motions.
>
> Regarding the possibility of settlement, we are in the same range we discussed, Dan, but the ultimate amount depends upon the timing of payment (i.e., one payment within a few weeks v. scheduled payments), and they would like legal covered on top of that, which will range from $25-$30,000 at this point.
>
> Please let me know your thoughts on the timing of payment and I'll run it by Radiance to see if they are willing to provide a number.
>
> Thanks!

*Id*.

Wilson and Simon subsequently discussed the method and timing of any settlement payments in a two and one-half minute phone call. During the call, Wilson reiterated that any agreement must be reduced to writing and subject to review and approval by his client because he did not know what other material terms it would require. Simon agreed.

A short time later, Simon emailed Wilson,

> Marc:
>
> Confirming our call, my client and I previously discussed terms of settlement such [that] she could arrange payment of $70,000 plus your attorney fees if we settled all matters shortly (without incurring much more on your or my end) and she had 30 to 60 days to arrange payment. She is traveling to visit family today, so I will have to coordinate with her when she lands. Let me know if this gets it done and we can work to agree on a mutually agreeable settlement agreement.

*Id*.

Wilson contacted Radiance for guidance concerning the monetary terms of a settlement. Radiance indicated it would be willing to settle for payment of $75,000 in thirty days, *and* an

additional $100,000 payment in sixty days, and payment of its legal fees within 90 days. Wilson, however, misunderstood. At 3:08 p.m. he emailed Simon,

> Thanks, Dan. I've been authorized to provide this offer:
>
> 75K in 30-days, *or*
> 100K in 60 days, and
> Legal fees in 90 days.

*Id.* (emphasis added). The next morning (June 30) Simon answered.

> Marc:
>
> I heard from my client last night and she has approved the settlement outlined in our previous E-mails. I'll endeavor to send a draft settlement agreement for your approval or comment over the weekend (or upon our return from the holiday on the 5th). By copy of this message to Kelly, I'm asking her to slow-play any additional work on the pending litigation, so we can avoid any further unnecessary expense (and ask that you do the same, since your fees are being paid as part of the settlement). Assuming I can get everything together on our end, funding within 30 days will not be a problem. I'm glad we were able to get to this point and look forward to putting this behind us soon.
>
> Kind regards,
> Dan

*Id.* At 11:24 a.m., Wilson replied,

> Dan,
>
> I am very, very sorry, but I misinterpreted my client's offer and forwarded you an incorrect one. It should have read "and" instead of "or," as follows:
>
> 75K in 30-days, and
> 100K in 60 days, and
> Legal fees in 90 days.

4

> I apologize for my miscommunication, but Radiance will not settle for $75 + legal. If you want to talk, I am available at the number below.

*Id.* At 12:00 p.m., Simon wrote back,

> This is a problem. I'll talk with Kelly and my client and let you know what she is willing to do.

*Id.*

Simon did not send Wilson a draft settlement, or otherwise get back to Wilson.

On July 7, Defendant asserted in a footnote to her response to Plaintiff's First Request for Production of Documents there was a dispute about a settlement.

That same day, Wilson filed a motion to compel in connection with Defendant's unsatisfactory response to Plaintiff's First Request for Production of Documents and sent Simon an email. In relevant part, Wilson's email states,

> Further, I was curious to see that after your late response to the RFP and in a footnote, nonetheless, there is a "dispute" about a "settlement." You know well that we discussed that our discussions would be reduced to writing, which you yourself confirmed in you[r] last email to me about the subject as I prepared for departure for my uncle's funeral. If we had a full agreement on a "settlement," why indeed would you send me a draft for "review and comment"? Methinks because we were not agreed on all terms, but merely a target dollar amount for settlement, as we discussed verbally. If you plan to make that claim to a judge, then be prepared to fully back that assertion up, including the complete set of terms to which we supposedly agreed.

*Id.*

On July 10, Wilson and Simon talked on the phone for approximately twenty minutes. Simon continued negotiations on the amount Plaintiff would accept in settlement. He also

mentioned additional terms he wanted and sought to exchange draft settlement agreements that added these terms.

On July 11, Wilson emailed Simon,

> Hi Dan,
>
> In the midst of our deadline today, I had the chance to speak with Radiance and inform them of your position. They are willing to consider counteroffers to the money terms immediately below [in the email chain], but as we agreed last time, subject to comment and approval of a draft settlement agreement. Regarding your request for attorney-client communication and attorney work product, they have not given me permission to share any information about our communications.

*Id*.

Simon replied the next day,

> Marc:
>
> Thank you for getting back to us. The response is disappointing. At this point, it makes sense for us to simply demand that your client honor the settlement agreement. Having relied on your statement following our call on June 29 that "we are in the same range," and knowing that you and I just discussed a range of "upper 5 figures," I proposed the upper limit of my settlement authority. It would not be fair, now that I showed my client's cards, to re-open the negotiation. Your self-serving communications claiming additional terms, conditions, contingencies or other reasons you intend to claim there was no contract for settlement are not accurate. There should be no question on the simple facts: an agreement to all material terms was reached on June 30 upon the terms you proposed on behalf of your client that were accepted by my client. Although you try to cancel the contract after agreement was reached because you claim you misinterpreted your client's offer, you refuse to provide any evidence supporting that claim. The settlement agreement is simple:

> Defendant will pay $75,000 to Plaintiff not later than July 30, 2017. Payment will be delivered to Plaintiff's attorneys.
>
> Defendant will pay Plaintiff's reasonable attorney fees and court costs of between $25,000 to $30,000 not later than September 29, 2017[.]
>
> Upon timely payment of the foregoing amounts, all matters related to the note, guarantees and other loan documents alleged in the pending litigation are settled.
>
> The parties agree to take, or omit from taking, any actions reasonably required to effect the agreement, including, without limitation, dismissing the pending litigation with prejudice.
>
> If there are terms or conditions you expected to be included in the settlement agreement, please let me know what those are.
>
> Thank you.
>
> Dan

*Id*.

Wilson did not reply. To date, Defendant never has provided a written draft of any purported settlement agreement.

**Standard**

A federal district court "has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous." *Harper Enters., Inc. v. Aprilia World Serv. USA, Inc.*, 270 Fed. App'x 458, 460 (8th Cir. 2008). In a diversity case such as this one, "the settlement agreement is construed according to state law." *Id*. Here, Missouri law provides the rule of decision.

Under Missouri law, whether the parties entered into an enforceable settlement agreement is a question of contract law. *Youngs v. Conley*, 505 S.W.3d 305, 313 (Mo. App. 2016). The party moving to enforce a purported settlement agreement bears the burden of proving "the existence of the agreement by clear, convincing and satisfactory evidence." *Eaton v.*

7

*Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. 2007). Evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition so that the fact finder is left with an abiding conviction that the evidence is true. *Youngs*, 505 S.W.3d at 314. Further,

> To enforce a purported settlement, the moving party must prove the essential elements of a contract: offer, acceptance, and consideration. A valid settlement agreement also requires a meeting of the minds and a mutual assent to the essential terms of the agreement. Whether a term is material depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought. Negotiations or preliminary steps taken in an effort to come to an agreement on a particular term of settlement do not constitute a contract. A mutual agreement is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time. A meeting of the minds occurs when there is a definite offer and an unequivocal acceptance.

*Id*. at 313-14 (internal citations omitted). Whether the essential elements of a contract exist is a question of fact which the trial court may determine. *Precision Invs., L.L.C. v. Cornerstone Propane, L.P.*, 220 S.W.3d 301, 303 (Mo. 2007).

## Discussion

The Court denies the motion for two reasons. First, the record here shows that before the attorneys began discussing settlement amounts, they agreed that any settlement would have to be reduced to writing and reviewed and approved by their respective clients before it was final and enforceable. Wilson repeatedly stated any agreement must be reduced to writing and subject to review and approval by his client because he did not know what other material terms it would require, and Defendant, through Simon, assented to this condition. This made reducing the

settlement agreement to writing a condition precedent to the contract's formation, a condition which has not been met here.

Defendant's argument that executing a mutually acceptable written settlement contract was an obligation under the contract (that is, a condition precedent to Plaintiff's having to perform its obligations under the contract), not a condition precedent to formation, is unavailing. Although Missouri law does not require a settlement to be in writing, much less a condition precedent to formation, the parties made it a condition precedent by agreement.

This case is not analogous to the decision in *Schumacher v. SC Data Center, Inc.*, as Defendant suggests. *Schumacher* was a class action in which there was no dispute that the parties had reached a settlement. No. 2:16-CV-04078-NKL, 2016 WL 7007539, at *1 (W.D. Mo. Nov. 29, 2016). The issue in *Schumacher* stemmed from the fact that before the district court could approve the settlement under Rule 23, the Supreme Court issued a decision invalidating the plaintiff and class members' claims. *Id*. The defendant then moved to dismiss the case, and the plaintiff moved to enforce the settlement. *Id*. The defendant argued there was no settlement because the court's approval was a condition precedent to the formation of a settlement. *Id*. at 2. The court rejected this claim, holding approval under Rule 23 is not a condition precedent to a class action settlement. Hence, *Schumacher* is inapplicable to the present case.

Second, even if it was unclear whether reducing the agreement to writing and having it reviewed and approved by their clients was a condition precedent to formation, the Court would still deny Defendant's motion because she has not carried her burden of showing by clear, convincing, and satisfactory evidence that the parties had agreed on all the essential terms. To begin, the fact that the parties disagree whether the "reduced-to-writing" requirement is a

9

condition precedent indicates there was not mutual assent to an essential term of a settlement contract. But this is not the only essential term on which it is unclear whether an agreement was reached. Although the record is clear that the parties at least made substantial progress towards determining a settlement amount, the Court is unconvinced that they ever settled on a final number. And assuming for the sake of argument that the parties agreed on payment of $75,000 within thirty days as part of the settlement amount, it is not clear that they reached agreement on another essential aspect of the settlement amount—legal fees. The parties discussed Defendant paying "[l]egal fees in 90 days," but they did not agree on how much this would be, or even how this amount would be determined. It appears they contemplated that the amount would be between $25,000 and $30,000, but they never agreed on what fees could be included, when the deadline for Defense counsel to charge fees ran, or whether Defendant's fees were capped at $30,000. Defendant's last email also added a new condition, that the legal fees must be "reasonable," language that would appear to allow Defendant to contest the amount of Plaintiff's legal fees, something to which Plaintiff never agreed. Given all this, the Court cannot find by clear, convincing, and satisfactory evidence that the parties agreed on all the material terms of a settlement.

Accordingly, Defendant's motions (Docs. 55, 59) are DENIED.

**IT IS SO ORDERED.**

Date: December 5, 2017            /s/ Greg Kays
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT